George Kiehna et al. v. B. H. Mansker et al., School Directors, etc.

1. SCHOOL DIRECTORS—*Unsuitableness of a School House—Site.*—The directors may decide that a school house is inconvenient or unsuitable for a school, and they are the judges of what constitutes the inconvenience or unsuitableness of the site.

2. SAME—*Authorized to Call Elections.*—Under paragraph 11 of section 27, chapter 122, R. S., entitled "Schools," the directors are authorized to call an election to determine where a school building shall be located.

3. SAME—*Can Not Estop Their Successors by Selecting a School Site.*—When the location of a school site is fixed at an election called by a board of directors, the power of a new board of directors to re-submit the question of location is not thereby lost, if, in their judgment, the site selected is unsuitable or inconvenient; nor is the right of the voters of the district thereby exhausted to again determine by vote where their school house shall be located.

4. VOTERS—*Refraining from Voting.*—At a school election for selection of a school site, if voters opposed to the proposed location refrain from voting, it is their privilege; and having done so, they can not complain of the result.

Bill for an Injunction.—Appeal from an order dissolving an injunction. Entered in the Circuit Court of Perry County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

## Statement.

This is an appeal from an order dissolving an injunction, issued upon the prayer of appellants as residents and tax-payers of school district No. 4, town 6 south, range 3 west, in the county of Perry, State of Illinois.

Complainants as tax payers and residents of said school district No. 4, alleged in their original bill of complaint in substance, that the directors of said district ordered an election to be held on February 6, 1897, to vote on building a new school house, and locating it at center of district at Darrington Well, and on issuing bonds to the amount of $650. That proper notices were posted and the election held, resulting in twenty-one votes for building at center of district, and nineteen against; and twenty-one in favor of issuing $650 in bonds, and nineteen against; and that a proper record was made of such proceedings. That prior to the election a deed for one acre of ground at said center of district had been made to the school trustees of said township for school purposes. That a contract to build the school house was awarded to William Russel.

That at an adjourned meeting of the board of school directors, held April 16, 1897, the contract with Russel was canceled and a contract to build entered into with S. H. Carson.

That an issue of bonds to the amount of $600 was ordered.

That suit was brought against said district to declare said election void, and to enjoin building school house at center of district, which suit was continued at the April term, 1897, of the Circuit Court by agreement of parties.

That at the April election of school directors, 1897, the complexion of said board of school directors was changed from a majority in favor of building at the center of the district, to a majority opposed to building there.

That subsequent to the election of said board of directors, in April, 1897, said board determined to ignore said election to build, and determined to call another election, and alleges notice for said election to be held July 24, 1897, for or against building school house on old site, and for or

against issuing bonds to the amount of $600. That no title to the old site had ever been made for the use of the district.

That the larger number of those opposed to said proposed election determined to refrain from voting thereat.

That in case of success at said election, said board designed to award contract and issue and sell bonds, which would result injuriously to complainants and the tax payers of said district. That the old site was a half mile distant from the center of the district.

Prayer for temporary injunction restraining said directors from holding said election, and from issuing bonds, and letting contract. On the 23d of July, 1897, a temporary injunction as prayed for was issued by the master in chancery.

On the 11th of September, 1897, upon motion of defendants in vacation, the temporary injunction was dissolved, and an appeal prayed from such order of dissolution by complainants, which was allowed upon filing bond in sum of $100 in forty days. The bond was filed but the appeal was not taken.

On the 4th of October, 1897, the board of directors again ordered an election to be held on the two propositions of building at the old site, and of issuing bonds to the amount of $600, which election was held October 16, 1897, resulting in twenty-six votes in favor of building on the old site and none against it.

On October 30th a supplemental bill was filed, alleging the dissolution of the temporary injunction on September 11th, and the prayer for appeal, filing of bond, and allowance of appeal.

It also alleges the meeting of the board of directors October 4th, the posting of notices October 5th, and the holding of the election October 16th, resulting in twenty-six votes for building on the old site and for issuing bonds, and none against. It also alleges that the board of directors intend to carry out the purpose of said election. Upon this bill as supplemented, a temporary injunction was issued November 5th.

On November 8th defendants filed their answer, and on November 26th the cause was heard in open court, and the temporary injunction dissolved. It is from this order that this appeal was taken.

JOHN BOYD and C. R. HAWKINS, attorneys for appellants.

W. T. VAUGHN, CHAS. D. KANE and B. W. POPE, attorneys for appellees.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Counsel for appellant in their brief and argument, say:

" The question at issue seems to be narrowed down simply as to the right of the school board to change, or order an election for a change of site, as located by election on the 6th of February, 1897, unless some good reason be shown for such action, such as the site having been located in a sickly or dangerous locality; or, conceding such right, has it in this instance been legally and rightfully exercised ? "

This is the only question involved.

It is provided in paragraph 11 of Sec. 27, Chap. 122, of the School Law, page 1449, Hurd's Statutes, 1897, that " They (the directors) shall have power to decide when the school site, or the school buildings, have become unnecessary, or unsuitable, or inconvenient for a school."

It is provided in Sec. 31, p. 1450, of the same chapter, " It shall not be lawful for a board of school directors to purchase or locate a school house site, or to purchase, build or move a school house, * * * without a vote of the people at an election called and conducted as required by Sec. 4 of Art. 9, of this act."

Under the paragraph first cited, the directors may decide that a school house is " inconvenient or unsuitable for a school." They are the judges of what constitutes the inconvenience or unsuitableness of the site. In this case it appears from the evidence that the site selected at the election on February 6, 1897, was deemed by the board of

directors elected in April, 1897, "inconvenient and unsuitable," because it was inaccessible by any public highway, and could only be reached by crossing private grounds a distance of a quarter of a mile, for which no permit had been obtained, and which the owner of the grounds testified he would claim damages for if a road was not put through. In the exercise of their discretion, in view of this condition, we think it clear that under the power conferred upon the board by paragraph 11, *supra*, the directors were authorized to call an election to determine where the building should be located. Admitting that by the election of February 6, 1897, the location was changed from the old site to the center of the township, the power of a new board of directors to re-submit the question of location was not thereby lost, if in their judgment the site selected was unsuitable or inconvenient; nor was the right of the voters of the district thereby exhausted to again determine by vote where their school house should be located. It is not claimed that due notice was not given, nor that the majority did not select the old site. If those opposed to that location refrained from voting, as it is alleged in complainant's bill they had determined to do, that was their privilege; but having done so, they can not complain of the result.

It is urged that the order October 4th for the election of October 16, 1897, ignores the right of the voters to select a site, because it limits the question submitted, to building "a new school house on the old site."

We think there is nothing in this objection. Its effect was to put the old site in competition with any and all other sites. It is apparent, however, from the evidence, that the contest was between the old site and the site selected February 6th at the center of the district. The result was to change the location from the site selected February 6, 1897, to the old site, selected October 16, 1897.

Seeing no error in the record, the judgment of the court is affirmed.